UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

IN RE:  Pulaski County Property           CASE NO.:  4:13-bk-13751
Owners' Improvement District
No. 4 (Villages of San Luis Project)                    CHAPTER 9

PLAN OF DEBT ADJUSTMENT

Pulaski County Property Owners' Improvement District No. 4 (Villages of San Luis Project) the Chapter 9 Debtor (herein after referred to as "the Debtor" or "the District") proposes the following Plan for the adjustment of its debts pursuant to Chapter 9 of the Bankruptcy Code:

Article I
Definitions

For the purpose of the Debtor's Plan, the following terms shall have the meanings specified below. Any term used in the Plan defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Code or Rules.

1.1   "Administrative Claim" means a claim specified in § 501 (a)(1) of the Code.

1.2   "Allowed Claim" means any claim in the amount and classification set forth in a Proof Claim timely filed by the Court or as set forth in the Debtor's list of Creditors unless such claim has been objected to by the Debtor. In the event of an objection by the Debtor, the subject Claim will be allowed only in the amount and class ordered by the Court.

1.3   "Allowed General Unsecured Claim" means a claim that is an allowed claim that is not secured by any lien on property of the Debtor.

1.4   "Allowed Secured Claim" means any allowed claim that is secured by a lien on the property of the Debtor.

1.5 "Bankruptcy Code" or "Code" shall mean the provisions of Title 11 of the United States Code.

1.6 "Bankruptcy Rule" or "Rules" shall mean the Federal Rules of Bankruptcy Procedure.

1.7 "Board of Commissioners" shall mean the duly appointed commissioners and governing body of the District.

1.8 "Bonds" shall mean the Series 2007-A and Series 2007-B Bonds issued by the District in the Original aggregate principal amount of $2,110,000.00.

1.9 "Bondholders" shall mean the owners of the Series 2007-A and Series 2007-B Bonds issued by the District.

1.10 "Bond Trustee" shall mean Centennial Bank, f/k/a Liberty Bank of Arkansas or any successor thereto.

1.11 "Claimant" shall mean the holder of an allowed secured or unsecured claim.

1.12 "Depository Trust Company" (DTC) of New York, NY is the exchange depository for the Bonds issued by the Debtor.

1.13 "District" is the Debtor, Pulaski County Property Owners Improvement District No. 4 (Villages of San Luis Project).

1.14 "Effective Date" shall mean 11 days after the Order of Confirmation has been entered upon the Court's docket without Notice of Appeal.

1.15 "Impaired" shall have the meaning as defined in § 1124 of the Code.

1.16 "Lien" has the meaning as defined in § 101 of the Code.

1.17 "Order of Confirmation" means the Order of the Court Confirming the Debtor's Plan pursuant to § 1129 of the Code.

1.18    "Petition Date" means the date on which the Debtor filed its Chapter 9 Petition, July 1, 2013.

1.19    "Plan" means the Debtor's Plan of Debt Adjustment as it may be amended.

1.20    "Pro Rata" means proportionately so that the ratio of the amount of the distribution made on account of particular Allowed Claims to the Distributions made on account of all Allowed Claims in the Class in which the Allowed Claims is included is the same as the ratio of the amount of such Allowed Claim to the total amount of Allowed Claims in the Class of the Allowed Claim.

1.21    "Unclaimed Distributions" means any distribution which is not claimed within 1 year following the date of distribution.

## Article II
## Construction

2.1    The words and phrases used in the Plan shall have the meaning provided in the Code or Rules.

2.2    Section or Article Captions are for convenience only and shall not affect the construction of the Plan.

2.3    Terms defined in the Plan are capitalized.

## Article III
## General Terms and Conditions

3.1    To the extent that any claim or portion thereof has been disputed or is otherwise contingent or unliquidated or has not been allowed by the Court, the Debtor may either reserve or segregate sufficient amounts to provide for such claims, ask the court to determine the amount to be reserved or ask the Court to estimate such claims for purpose of allowance to prevent delay in the administration of the Plan.

3.2    Pursuant to §1122(a) of the Code, the Plan designates classes of claims. Claims are classified in a particular class only to the extent that the claim qualifies within the description of that particular class. Multiple claims filed by the same creditor within a particular class shall be aggregated and to the extent that the claim is an allowed claim shall constitute a single allowed claim.

Article IV
**Administrative Claims**

4.1    The holders of administrative claims shall receive on account of such claims payment in the amount of such claims on or before the effective date of the Plan or as soon thereafter as practicable. Administrative claims paid or to be paid include:

| | | |
|---|---|---|
| 1)  | Cobas contracts | $161,000.00 |
| 2)  | Grubbs Testing | $ 15,784.38 |
| 3)  | Redstone Contracts | $395,275.60 |
| 4)  | Marlar Engineering | $ 25,000.00 |
| 5)  | Smith Akins, P.A. (approximately) | $ 25,000.00 |
| 6)  | Jack, Nelson, Jones & Bryant (approximately) | $ 27,000.00 |
| 7)  | Miscellaneous maintenance | $  5,000.00 |
| 8)  | Subdivision Sale Expenses | $ 10,000.00 |
| 9)  | Post Petition Property Tax | $ 10,000.00 |
| 10) | Pre Petition Property Tax | $ 33,806.78 |
| 11) | Arbitrage Rebate Reports | $  8,750.00 |
| 12) | COBAS final | $ 14,510.00 |

All Article IV claims are unimpaired.

## Article V
### Unimpaired Post-Petition Administrative Claims

5.1    The post confirmation administrative fees of the Bond Trustee or its successor will be paid as incurred until all funds are distributed. Post confirmation legal and accounting fees necessary for implementation of the Plan will be paid in full. These should not exceed $5,000.00.

## Article VI
### Impaired Classes

6.1    All claims other than those set forth in Article IV and Article V above are impaired. Article VI claims consist of the holders of the Bonds issued by the Debtor as follows.

| | |
|---|---|
| Series A Outstanding Principal | $1,875,000.00 |
| Series B Outstanding Principal | $ 235,000.00 |
| Series A Unpaid Interest | $ 206,250.00 |
| Series B Unpaid Interest | $ 26,388.56 |

## Article VII
### Treatment of Classes of Claims under the Plan

7.1    Article V claims will be paid in full upon or before the effective date of the Plan.

7.2    Article VI claims will be paid pro rata from those funds remaining after payment of Article V claims.

## Article VIII
### Means for Implementation of Plan

8.1    The Plan will be funded using those funds the District has on hand, approximately $305,880.45, and those proceeds of the sale of 84 single family lots together with all improvements and any other appurtenant rights of the Debtor including, but not limited to, adjacent streets, road, alleys, right of ways and easements and a common area known as Perez

Park along with any remaining undeveloped property which is the development more commonly known as the Villages of San Luis, Pulaski County Arkansas.

8.2 The purchase price of the property is $1,554,000.00 for the lots and related property rights and $12,000.00 for the portion of the property known as Perez Park. The sale will close as soon as possible after the effective date of the Plan, subject to the terms and conditions of the Purchase and Sale Agreement dated November 14, 2013 between the Debtor and RC Maumelle, LLC or Assigns.

8.3 Post Confirmation operations of Debtor shall continue, and the Debtor will continue to exist to consummate the Plan and make the distributions as provided in the Plan. Upon completion of all distributions, the Board of Commissioners shall wind up the affairs of the District pursuant to applicable state law.

8.4 The Debtor is authorized to execute and record any documents necessary to implement the Plan.

8.5 Objections to any disputed claims will be filed on or before the effective date of the Plan. The Debtor is unaware of any contested claims.

8.6 The Debtor may pursue and enforce any claims of the Debtor. The Debtor is not aware of any outstanding claims on behalf of the Debtor that could be maintained by the Debtor.

Article IX
**Discharge**

9.1 Discharge of Debts. Except as otherwise provided in the Plan, Confirmation of the Plan will discharge the Debtor from any and all Claim and Debts that arose prior to the Confirmation Date or portions thereof, and which are not to be paid under the terms of the Plan, whether or not: (1) a Proof of Claim based on such Debt is filed or deemed filed under §501 of the Code: (2) such Claim is an Allowed Claim under §502 of the Code; or (3) the holder of such Claim accepts

the Plan. Distributions under the Plan will be the only distributions made upon Claims, and any and all sums owed thereon in excess thereof, as of the date of the commencement of the Chapter 9 case, shall be discharged.

9.2     Judgments Obtained on Discharged Debts are Void. Pursuant to §§901(a) and 524(a)(2) of the Code, the Debtor's discharge upon Confirmation of the Plan under §944(b) of the Code, voids any judgments at any time obtained, to the extent that such judgment is a determination of liability of the Debtor with respect to any Debt discharged, whether or not discharge of such Debt is waived.

9.3     Discharge Injunction. Pursuant to §§901(a) and 524(a)(2) of the Code, the Debtor's discharge upon Confirmation of the Plan under §§944(b) of the Code shall operate as an injunction against the commencement or a continuation of an action, the employment of process, or an act to collect, recover, or offset any discharged Debt as a liability of the Debtor.

Article X
**Modification of Plan**

10.1    The Plan may be modified upon motion of the Debtor, or corrected by the Debtor prior to the Effective Date, without notice and a hearing and without additional disclosure pursuant to §1125 of the Code provided that, after notice to all parties who have filed and served a request for special notice in the Case, the Court finds that such modification does not materially or adversely affect any Creditor or any Class of Creditors.

10.2    At any time prior to Consummation of the Plan, the Debtor may seek Court authorization to remedy any defect or omission, reconcile any inconsistencies in the Plan or in the Confirmation Order, or effect such other changes, modification, or amendments as may be necessary to carry out the purposes and intent of the Plan.

## Article XI
## General Provisions

11.1     Jurisdiction. The Court will retain jurisdiction until the entry of a Final Decree closing the Case. The Court shall further retain jurisdiction under the Plan for all purposes consistent with the Plan and the Code, which purposes include, but are not limited to:

    11.1.1  The classification or allowance of a Claim of any Creditor and the re-examination of Claims which have been allowed for purposes of voting and the determination of such objections as may be filed against Creditors' Claims.

    11.1.2  The determination of all causes of action, controversies, disputes or conflicts involving the right to participate in any Distribution under the Plan, whether or not subject to an action pending as of the Effective Date, between the Debtor and any other party.

    11.1.3  The correction of any defect, curing of any omission, or the reconciliation of any inconsistency in the Plan or in the Order of Confirmation, as may be necessary to carry out the purposes and intent of the Plan.

    11.1.4  The modification or amendment of the Plan after Confirmation pursuant to the Bankruptcy Rules or Code.

    11.1.5  The enforcement and interpretation of the terms and provision of the Plan.

    11.1.6  The entry of any Order concluding or terminating the Case.

    11.1.7  The granting of extensions of any deadlines set herein.

    11.1.8  The administration of the Case, and implementation and consummation of the Plan.

11.2     Interpretation. To the extent that the terms of the Plan are inconsistent with the terms of any agreement or instrument concerning any Claim, or any other matter, the terms of the Plan shall control.

11.3     Binding Effect. Upon Confirmation of the Plan, the Debtor, any entity acquiring property pursuant to the Plan, and all Creditors, whether or not such Creditor has filed a Claim or such Claim is deemed filed under §501 of the Code, and whether or not such Claim is allowed under §502 of the Code, and whether or not such Creditor has accepted the Plan, shall be bound by the provisions of the Plan pursuant to §944(a) of the Code.

11.4     Applicable Law. The Plan is to be governed by and construed under the Code and the laws of the State of Arkansas, as may be applicable.

11.5     Implementation Orders. At any time, the Court may make such Orders or give such direction as may be appropriate under §§945(a) and 1142(b) of the Code.

Respectfully Submitted,

Pulaski County Property Owners'
Improvement District No. 4
(Villages of San Luis Project)

By: /s/ James E. Smith, Jr.

**Smith Akins & Gladden, P.A.**
James E. Smith, Jr. (77128)
Allison R. Gladden (2008205)
400 W. Capitol Avenue, Suite 1700
Little Rock, AR 72201
(501) 537-5111

ATTORNEYS FOR DEBTOR